Mr. Timothy J. McFarland Gulf County Attorney 326 Reid Avenue Port Saint Joe, Florida 32456
Dear Mr. McFarland:
On behalf of the Gulf County Board of County Commissioners, you have asked for my opinion on substantially the following questions:
1. Is it mandatory pursuant to Article VIII, section 1(e), Florida Constitution, and section 124.01, Florida Statutes, that the Gulf County Board of County Commissioners include and count the prison population within the district in which such prison population is physically located when attempting to balance each of the five county districts as nearly equal in population as is practical as directed by the Florida Constitution and the statutes?
2. If the county must include and count the prison population, is the Gulf County Board of County Commissioners authorized to establish a method to distribute the population numbers for the prison population among the five districts to balance the district populations as equally as possible?
In sum:
1. The Gulf County Board of County Commissioners must include and count the prison population within the district in which such prison population is physically located when attempting to balance each of the five county districts in compliance with Article VIII, section 1(e), Florida Constitution, and section 124.01, Florida Statutes. However, as this question is controlled by state law, the Legislature may wish to consider whether Florida's prison population should be included in population counts for purposes of redistricting.
2. The Gulf County Board of County Commissioners is not authorized to distribute the population numbers for the prison population among the county's districts in an effort to balance the district populations, but must utilize the population figures as they exist in place.
According to information supplied to this office, the Gulf County Board of County Commissioners is reviewing the redrawing of the county's five commission districts based on the results of the decennial census completed in 2000. Since the last redistricting was undertaken, two state prisons have been constructed in Gulf County and substantially affect the population in two of the five current districts.
Question One
Your first question is whether the redrawing of county commission district boundaries must take into account the prison population. For the following reasons, I am of the opinion that the prison population must be included.
Article VIII, section 1(e), Florida Constitution, was amended in 1984 to provide for single-member county commission districts.[1]
This constitutional provision states:
"Except when otherwise provided by county charter, the governing body of each county shall be a board of county commissioners composed of five or seven members serving staggered terms of four years. After each decennial census the board of countycommissioners shall divide the county into districts of contiguousterritory as nearly equal in population as practicable. One commissioner residing in each district shall be elected as provided by law." (e.s.)
Thus, the constitution requires that after receiving the results of the federal decennial census, the board of county commissioners must reexamine and redraw county districts based on population figures.
The statutory section implementing this constitutional provision is section 124.01, Florida Statutes:
"(1) There shall be five county commissioners' districts in each county, which shall be numbered one to five, inclusive, and shallbe as nearly equal in proportion to population as possible.
(2) There shall be one county commissioner for each of such county commissioners' districts, who shall be elected by the qualified electors of the county, as provided by s. 1(e), Art. VIII of the State Constitution.
(3) The board of county commissioners shall from time to time, fixthe boundaries of the above districts so as to keep them as nearlyequal in proportion to population as possible; provided, that changes made in the boundaries of county commissioner districts pursuant to this section shall be made only in odd-numbered years.
(4) County commissioners' districts now existing shall remain as now constituted until changed by the board of county commissioners, as provided by the constitution and in this chapter.
(5) This section shall not apply to Dade County." (e.s.)
Thus, as this office has noted on numerous occasions, the statutes and the constitution "impose a mandatory duty upon the county commissioners to redistrict after each decennial census."[2] The county commissioners have no option but to create new districts according to population.[3] Following the directive of ArticleVIII, section 1(e), Florida Constitution, for creating districts that are as nearly equal in proportion to population as is possible, the statute restricts such reapportionment to odd-numbered years.
Section 1.01(7), Florida Statutes, states:
"Reference to the population or number of inhabitants of any county, city, town, village, or other political subdivision of the state shall be taken to be that as shown by the last preceding official decennial federal census, beginning with the Federal Census of 1950, which shall also be the state census and shall control in all population acts and constitutional apportionments, unless otherwise ordered by the Legislature."[4]
You have supplied this office with a copy of the census information provided to the Board of County Commissioners of Gulf County. Included in the population count are prisoners serving sentences in the two Gulf County prisons. The constitutional and statutory provisions discussed above, when read together, establish a requirement that population figures from the last decennial census be used to reconfigure county commission districts into districts with populations as nearly equal as is possible.
While there seems to be some concern that the prison population should not be included in the count because, as convicted felons, the prisoners do not vote, I would note that the census figures include various groups of individuals who do not vote, such as those too young to vote or those who may be disqualified by alienage or nonresidence, i.e., aliens, nonresident military personnel, nonresident students, etc. As the United States Supreme Court recognized in Gaffney v. Cummings,[5] "`census persons' are not voters."[6] Voting status is not a qualification under the constitution and statutes for inclusion in the population for purposes of the census or for drawing county commission districts.
Both the United States Supreme Court and The Florida Supreme Court, in a series of cases, have recognized that equal protection of the laws requires that representation by legislative bodies reflect substantially equal populations.[7] While the Equal Protection Clause of the United States Constitution does not require states to use total population figures derived from the federal census as the standard by which substantial population equivalency is to be measured,[8] Florida's constitutional and statutory scheme of apportionment does recognize census figures as the benchmark for these purposes.
In sum, it is my opinion that the Gulf County Board of County Commissioners must include and count the prison population within the district in which such prison population is physically located when attempting to balance each of the five county districts in compliance with Article VIII, section 1(e), Florida Constitution, and section 124.01, Florida Statutes.
Question Two
In light of my response to question one, you ask whether the Gulf County Board of County Commissioners is authorized to establish a method to distribute the population numbers for the prison population among the five districts to balance the district populations in as nearly equal a fashion as possible.
While it is true that county commissioners may exercise reasonable discretion when dividing a county into county commission districts (the constitution and the statutes speak in terms of dividing the county into districts that are as nearly equal in population as may be practical), that discretion must be exercised within the terms of the constitution. As the United States Supreme Court stated in Reynolds v. Sims, a seminal one-person, one-vote case, "[we] realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. Mathematical exactness or precision is hardly a workable constitutional requirement."[9]
Thus, while the board cannot disregard the mandate of the Florida Constitution requiring that such districts be created with a view to equality in population, this does not mean that the board is bound to create districts that are identical in population.[10]
In light of the specific language of Article VIII, section 1, Florida Constitution, and section 124.01, Florida Statutes, it is my opinion that the Gulf County Board of County Commissioners is not authorized to distribute the population numbers for the prison population among the county's districts, but must utilize the population figures as they exist in place. The constitution requires that the county commissioners divide the county into districts of contiguous territory "as nearly equal in population as practicable," and the statutes reflect this requirement. Such a mandate would not allow the distribution of population groups throughout the county to achieve a more equal distribution.
Finally, this office has been advised that in 1986 Gulf County voluntarily entered into a consent agreement to settle a federal lawsuit involving county voting districts.[11] Those provisions are binding on the county and must be followed until such time as the terms of this agreement are revised.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, HJR 452, 1984, approved by the electorate at the general election of November 1984.
[2] See, e.g., Ops. Att'y Gen. Fla. 74-359 (1974), 72-17 (1972) and 70-53 (1970).
[3] See, Ops. Att'y Gen. Fla. 74-359 (1974) and 47-162 (1947).
[4] And see, Art. X, s. 8, Fla. Const., which provides:
"(a) Each decennial census of the state taken by the United States shall be an official census of the state.
(b) Each decennial census, for the purpose of classifications based upon population, shall become effective on the thirtieth day after the final adjournment of the regular session of the legislature convened next after certification of the census."
And see, Art. III, s. 16, Fla. Const., and Art. XII, s. 13, Fla. Const., relating to use of the decennial census in legislative apportionment.
[5] 412 U.S. 735, 93 S.Ct. 2321 (1973).
[6] Id. at 746; 93 S.Ct. 2328.
[7] See, Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362 (1964);Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114 (1968);Milton v. Smathers, 389 So.2d 978 (Fla. 1980); In reApportionment Law Senate Joint Resolution No. 1305, 1972 RegularSession, 263 So.2d 797 (Fla. 1972).
[8] See, Burns v. Richardson, 384 U.S. 73, 92, 86 S.Ct. 1286,1295-1297 (1966).
[9] 377 U.S. 533, 577, 84 S.Ct. 1362, 1390 (1964).
[10] See, Apportionment Law Senate Joint Resolution No. 1305, 1972 Regular Session, 263 So.2d 797, 802 (Fla. 1972) ("Mathematical exactness is not an absolute requirement in state apportionment plans; however, deviations, when unavoidable, must be de minimis."); Op. Att'y Gen. Fla. 74-359 (1974), and cases cited therein.
[11] See, Consent Judgment dated June 17, 1986, Peters v. GulfCounty, MCA 86-2035-RV (N.D.Fla., 1986)